E. H. SNOW v. J. K. HUDSON.— SAME v. W. C. ED-
WARDS, *as Secretary of State.*
Nos. 10368, 10369.

1. STATE PRINTER—*Injunction—Action in Quo Warranto, not
Abated.* An action brought by the person in possession of the
office of state printer, prior to the commencement of the next regu-
lar term, for the purpose of enjoining a person claiming to be his
successor from taking possession of the office and the secretary
of state from recognizing such person as state printer, does not
abate an action of *quo warranto* brought against such person
after he has taken possession of the office and been recognized as
state printer by the secretary of state, where it appears that such
prior action has been dismissed before the trial of the *quo war-
ranto* case.

2. LEGISLATURE—*Joint Session—Statute, Construed.* The pro-
visions of chapter 17 of the Laws of 1861 with reference to the
manner of convening the legislature in joint session are directory
only, and strict compliance therewith is not absolutely essential
to the validity of the proceeding of a joint convention where a
quorum of each house is actually present, and notice of the in-
tention to hold a joint convention has been duly given.

3. ELECTION OF STATE PRINTER—*Invalid Provision of Statute.*
The provision contained in section 98 of chapter 166 of the Laws
of 1879, requiring the concurrence of a majority of the members
elected to each house of the legislature in the election of a state
printer, conflicts with the provisions of section 4 of article 15 of
the constitution of this state, and is invalid. (MARTIN, C. J., dis-
senting.)

4. ———— Other matters necessary to the disposition of the case are
discussed in the opinion, but, owing to the diversity of views of
the members of the court, no syllabus thereof is written.

*Original Proceeding in Quo Warranto.*

THESE two cases were tried and submitted together.
The first is an action in the nature of *quo warranto,*
brought by E. H. Snow against J. K. Hudson, to try
the title to and recover possession of the office of state
printer.    The second is an action also brought by
Snow against W. C. Edwards, as secretary of state,
to compel him to recognize Snow as state printer, and

deal with him accordingly. The defendants deny the plaintiff's title to the office, and this is the main question in both cases. Although quite a number of depositions and quite an amount of documentary evidence have been introduced on both sides,.there is no controversy upon any material question of fact. On the third Tuesday in January, 1889, Clifford C. Baker was duly elected to the office of state printer, having received the votes of 37 senators and 121 representatives, being all the votes cast by members of each house. He thereafter qualified, took possession of the office, and discharged its duties for the ensuing regular term commencing on the 1st of July after his election. On the third Tuesday in January, 1891, a joint session of the legislature was held, at which there were present 39 senators and 125 members of the house. The plaintiff, E. H. Snow, received the vote of one senator and of 100 representatives. He was declared elected for the term beginning July 1, 1891.

The only record of any joint convention for the election of a state printer in 1893 is of a meeting by 24 senators with what is known as the "Dunsmore House," on Friday, the 27th of January, 1893. Mr. Snow received all the votes cast by this convention, but it is not now claimed on his behalf that the proceedings were of any validity. On December 12, 1894, the plaintiff tendered his resignation of the office of state printer to the governor, giving as his reason for so doing that his title to the office was questioned. Governor Lewelling thereupon issued a commission, reciting that a vacancy existed in the office of state printer, and appointing the plaintiff to fill such vacancy for the unexpired term, and until his successor should be .elected and qualified. Snow thereupon executed a bond in due form, and took the

oath of office, and continued to act as state printer as he had done before. On Tuesday, January 15, 1895, a resolution in the following form was passed by the house of representatives, as house concurrent resolution No. 3 :

" *Resolved*, By the house of representatives, the senate concurring therein, that the senate and house of representatives meet in representative hall in joint session at 12 o'clock M. this day, Tuesday, January 15, 1895, for the purpose of electing a state printer."

This resolution having been sent to the senate, a substitute therefor was offered and adopted, in the following form :

"*Resolved*, That the senate and house of representatives meet at 12 o'clock M. in representative hall, for the purpose of electing a state printer for the term beginning July 1, 1895, and ending July 1, 1897, and that we continue to so meet from day to day until some person shall have been elected by a concurrence of a majority of the members elected to each body ; and the president of the senate and the speaker of the house of representatives are each hereby instructed not to issue a certificate of election to any person until he shall have received the affirmative vote of at least 21 senators and 63 representatives."

This substitute was not acted on in the house, nor was any further action taken on the resolution by either body. At 12 o'clock the president of the senate announced that, the hour having arrived for the election of state printer, the senate would take a recess until 2 o'clock P. M. The president of the senate and a number of the senators then left the senate chamber and proceeded to representative hall. The journal of the senate shows that Senator Dennison appealed from the decision of the chair ; that the president *pro tem.* then took the chair ; that the question was put, "Shall the decision of the chair be

sustained? and that a majority having not voted to sustain the chair, the chair was not sustained." The journal of the house shows that a joint convention was held, over which the lieutenant-governor presided; that there were present 16 senators and 122 members of the house; that J. K. Hudson received the votes of 13 senators and 91 representatives; that he was thereupon declared by the president of the joint convention duly elected state printer, and thereafter received a certificate of his election, signed by the president of the senate and the speaker of the house of representatives, as provided by law. He afterward executed an official bond, which was duly approved, and took the prescribed oath of office.

On the 20th of June, 1895, an action was brought by the plaintiff against the defendants, Hudson and Edwards, to enjoin Hudson from taking possession and exercising the duties of the office of state printer, and Edwards, as secretary of state, from recognizing him as such. The ground upon which this injunction was asked was, that the plaintiff was in the possession of the office and entitled to discharge its duties and receive its emoluments, and that the defendant Hudson claimed to have been elected to the office, and threatened to take possession thereof on the ensuing 1st day of July, and that the defendant Edwards intended to officially recognize him as such officer. A hearing was had before the district court of Shawnee county on an application for a temporary injunction, which was refused. The defendant thereafter answered, setting up his title to the office. The action last named was pending at the time these cases were brought in this court, but was dismissed by the plaintiff on the 6th of September. On the 1st of July, 1895, the defendant Hudson assumed the duties of the office

of state printer, was recognized by the defendant Edwards as such officer, and has ever since acted as such. The exact date on which the plaintiff first took possession of the office of state printer is not shown, nor is there any evidence as to the particular manner of Baker's leaving the office. The opinion herein was filed January 11, 1896.

*G. C. Clemens,* and *David Overmyer,* for plaintiff.

*Waggener, Horton & Orr,* and *Troutman, McKeever & Stone,* for defendants.

*F. B. Dawes,* attorney general, for defendant Edwards.

The opinion of the court was delivered by

ALLEN, J. : The questions involved in these cases are of a delicate character, involving, as they do, the validity of the proceedings of the legislative department of the state government. On consultation, a quite unusual diversity of opinion is found to exist among the members of the court, and, in order to make known the conclusions reached on the various branches of the case, it will be necessary to depart somewhat from the usual custom in writing an opinion.

An objection is made on behalf of the defendants to any consideration of the merits of these cases, on the ground that the prior action, commenced in the district court of Shawnee county to enjoin the defendant Hudson from taking possession of the office, and the defendant Edwards from recognizing him as state printer, abates the present actions. The relief sought in that case was quite different from that asked in these cases. That action, having failed, was dismissed before the trial of these cases. The objection

is untenable.  The rights of the respective parties to the possession of the office of state printer could not be fully determined and settled in an action for injunction.

The office of state printer was established by an amendment to the state constitution, adopted in 1868, which appears as section 4 of article 15, and reads as follows :

"All public printing shall be done by a state printer who shall be elected by the legislature in joint session and shall hold his office for two years and until his successor shall be elected and qualified.  The joint session of the legislature for the election of a state printer shall be on the third Tuesday of January, 1869, and every two years thereafter.  All public printing shall be done at the capital, and the prices for the same shall be regulated by law."

In 1861 an act was passed with reference to holding joint conventions of the two houses of the legislature, which now appears as chapter 57 of the General Statutes of 1889.  By section 6 of that act it is provided, "That to elect any person in said joint convention a majority voting in the affirmative of all the members elected to the two houses shall be necessary."  In 1879 another act was passed, which now appears as paragraph 6074 of the General Statutes of 1889, which reads as follows :

"A state printer shall be elected by the legislature every second year, as provided in the constitution. For the purpose of such election, the legislature shall meet in joint session on the third Tuesday in January, and shall continue in such session from day to day until some person is elected state printer by the concurrence of a majority of the members elected to each house.  Immediately after such election, the president of the senate and speaker of the house of representa-

tives shall furnish to the state printer elect a certificate of his election.''

The main questions for our consideration are :

(1) Whether the plaintiff, Snow, has shown that he ever had any valid title to the office ; (2) whether the defendant Hudson was duly elected to the office.

In arriving at a decision of these main questions, various others of much doubt and difficulty must be considered. It is contended on the part of the plaintiff that, to constitute a joint session of the legislature, there must be a concurrent resolution passed by both the senate and house of representatives fixing the hour and place of meeting, and specifying the business to be transacted ; that there must be then a meeting at the time and place agreed upon of a quorum of the senate and a quorum of the house of representatives ; and that no election can be held without the presence of a majority of the members of each body. It is further contended, that the act of 1879, which in terms requires the concurrence of a majority of the members elected to each house, is valid, and that, inasmuch as he himself never received the votes of a majority of the members elected to each house, he was never elected state printer, but that he first obtained a valid title to the office by virtue of an appointment by the governor on the 12th day of December, 1894, although he had exercised the duties of the office and received his compensation therefor from the 1st of July, 1891, until that date. On the part of the defendants it is contended, that there was an agreement on the part of both the senate and the house of representatives to meet in joint convention in representative hall on the 15th day of January, 1895, at 12 o'clock noon, and that all that is contained in the senate resolution beyond that fixing the time and

place of meeting is mere surplusage, and counts for nothing; that there was a meeting held in accordance with the substance of the resolutions passed by both houses; that Hudson received the votes of a majority of the members of the joint convention, and of all of the members elected to both houses, and that he was therefore duly elected.

We are all agreed upon the proposition that a concurrent resolution fixing the time and place of meeting is not absolutely indispensable to the validity of the joint convention; that if due notice is given, and a quorum of each house is present, it will be sufficient to constitute a valid convention for the election of a state printer. The constitution requires the legislature to meet in joint session on the third Tuesday in January of each odd-numbered year for the election of a state printer, and, while the usual and orderly method of fixing the time and place is that pointed out by the statute of 1861, we do not think full compliance with its provisions absolutely essential to an election otherwise valid.

Was either of the parties to this action ever lawfully elected state printer? This depends on the validity of the statute of 1879, which requires the concurrence of a majority of the members elected to each house. C. C. Baker received the votes of a majority of all the members elected to each house. But the plaintiff did not receive such a majority either in 1891 or in 1893, nor did the defendant receive such a majority in 1895. *Prouty v. Stover*, 11 Kan. 235, is cited and relied on largely by both parties. It was there held that "chapter 17 of the acts of 1861, providing for joint conventions of the two houses of the legislature, is applicable to the election of a state printer, is not repealed by the constitutional amend-

25—56 KAS.

ment of 1868, and is constitutional''; and that, under
the sixth section of the act, an affirmative vote of a
majority of all the members elected to both houses
was necessary; and that the plaintiff was not elected
to the office, though on the first ballot he received a
majority of all the votes of the joint convention, at
which a quorum was present. The act of 1879 is
valid, unless it conflicts with the constitutional provi-
sion with reference to the election of a state printer.
In the case of *Prouty v. Stover*, it was held that the
legislature might determine what majority should
be required in order to elect; that in the absence
of any constitutional inhibition, the legislative power
in that respect was unrestricted. The act under
consideration, however, presents a further question:
Can the legislature not only prescribe what proportion
of the votes of all of the members of the joint convention
shall be required to elect, but also require a severance
of the votes of the two bodies, and that the candidate
shall receive the votes of a majority of the members
of each house? The Chief Justice is of the opinion
that the legislature has this power; that it may re-
quire a majority only of a quorum, or of all of the
members elect in joint convention, or that it may re-
quire a majority of a quorum of the members elected
to each house, or of all of the members elected to
each house; that there is neither an express nor im-
plied constitutional restriction on the power of the
legislature in this respect; and that this view is
sustained by the opinion of the court in the case
of *Prouty v. Stover*. Mr. Justice JOHNSTON and the
writer, however, concur in holding the act of 1879
invalid and inconsistent with the provisions of the
constitutional amendment of 1868. The term ''joint
session,'' in our view, has a well-recognized meaning,

and implies the meeting together and commingling of the two houses, which, when so met and commingled, act as one body. Each member of that body, when it has been once properly and lawfully convened, has equal rights, and his vote has equal weight with that of any other member; and it is beyond the power of the legislature to say that, in a session which the constitution says shall be joint, the vote of a senator shall have greater weight than the vote of a member of the house. The framers of the constitutional provision, and the people who voted for its adoption, are presumed, not only to have understood the meaning of the words they selected, but also the customs of joint conventions which meet in all the states for the election of United States senators, and in many of them for other purposes. Our understanding of the very purpose of making a session joint is to remove the check which each house holds on the other, and to permit the two houses combined to vote and act as a single body. If the act of 1879 is valid, 21 senators may defeat the election of a state printer, although 125 representatives and 19 senators vote for the same person. No duty would rest on the senators to yield, because their right to vote for the person of their choice would be equal to that of the other members.

Was a valid joint convention held in 1895? The journal of the senate contains no record of the proceedings of a joint convention, but it is admitted that the journal of the house shows the principal facts with reference to what actually took place. On Tuesday, January 15, 1895, the day fixed by the constitution for the election of the state printer, a resolution providing for a joint convention to be held on that day at 12 o'clock M., in representative hall, for the purpose of electing a state printer, was passed by the house

and sent to the senate. On its receipt in the senate, a substitute was passed fixing the same hour and place of meeting, but providing that the election should be for the ensuing regular term, and that no person should be declared elected unless he had received the affirmative vote of 21 senators and 63 representatives. This substitute was never acted on in the house, nor was there any further action in either body on the concurrent resolution. At 12 o'clock the president of the senate announced that, the hour having arrived for the election of a state printer, the senate would now take a recess till 2 o'clock P. M. He and a number of the senators then left the senate chamber, and proceeded to representative hall. The other senators remained. The president *pro tem.* of the senate took the chair, and the senators who remained in the senate chamber refused to recognize the right of the president of the senate to declare a recess, and refused to attend the joint session. The lieutenant-governor took the chair in representative hall, as president of the joint convention. The secretary of the senate being absent, Senator Scott was elected as secretary *pro tem.* On roll-call, 14 senators only answered to their names, but two others came in before the voting was concluded.

The Chief Justice is of the opinion that the separate proceedings of the two houses were sufficient as preliminaries to a joint session, but is in doubt whether a joint session can be constituted without the presence of a quorum of each house, and on this point he expresses no opinion.

Mr. Justice JOHNSTON holds these proceedings sufficient to constitute a valid joint session; that there was an agreement on the time, place and purpose of the joint session; that all that was contained in the

senate resolution beyond this was mere surplusage, and should be disregarded. It appears that 122 members of the house were present and voted, and the announcement of the president of the senate notified the senators that he and the senators who accompanied him intended to then hold a joint session with the house. These proceedings, though somewhat irregular, are considered by him sufficient to constitute a valid joint convention.

The writer is of the opinion that, if a quorum of the senators had actually attended, the mere irregularities in the manner of getting together would not have invalidated the proceedings, but that the attendance of a quorum of each house is absolutely essential to the power to act as a joint convention. The constitution vests the power to elect in the legislature in joint session. The legislature consists of a senate and a house of representatives. While all of the members need not be in attendance in order to constitute a valid house and a valid senate, a quorum, which the constitution fixes at a majority, must be present. Although the house of representatives contains a large majority of the members of the joint convention, certain it seems to me that there can be no joint convention until the senate attends. The constitution nowhere, in express terms, or by any fair implication, confers on the house of representatives alone, even though every member should vote for the same person, power to elect a state printer. The senate must attend, and the word "senate" can never mean less than a quorum of the senate. There is no force in the suggestion that 21 senators, by refusing to enter a joint convention, can prevent the election of a state printer just as effectually as by refusing to vote for any particular person when the joint convention has been formed. The law makes it

the clear duty of the senate and of the senators, under their oaths of office, to attend a joint convention, and it is to be presumed that they will do so ; but, when voting in that joint session, no duty rests on them to vote for any one other than the person of their own selection. Officials do sometimes fail to perform the duties the law imposes on them, but, unless we can safely pre-‧ sume that they will perform their duties, the very idea of government must be abandoned.    It is unnecessary to consider whether the attendance of the absent senators could have been compelled, under the circumstances of this case, because the facts present no such question.

It follows from these conclusions that, in the opinion of the majority of the court, Mr. Snow was duly elected state printer in 1891 ; that, as no other person was elected as his successor in 1893, he held over under the provisions of the constitution, and was the state printer *de jure* at the time of his resignation on December 12, 1894 ; that his resignation and reappointment gave him no greater and no less title to the office than he had before, and that he was entitled to hold the office until a successor was duly elected and qualified.    Chief Justice MARTIN holds that the plaintiff was never duly elected state printer, having never received a majority of the votes of all of the members elected to each house ; that his resignation was a mere nullity because he had no title to give up, and there was no actual vacancy to be filled, for he was occupying the office every moment of the day and night of December 12, 1894, and thereafter until July 1, 1895, just as he had been ever since July 1, 1891. He held two full terms as a *de facto* officer, and on the expiration of the last, the defendant having a certificate of election in due form signed by the lieutenant-

governor and the speaker of the house of representatives, as officers of the joint session actually held at the proper time, the secretary of state was justified in recognizing him as state printer, for he could not decide that such certificate was either void or voidable; and the defendant, having obtained peaceable possession of the office, at least under color of proper authority, is entitled to hold it as against one having no better title, under the maxim *potior est conditio defendentis*.

It is shown that C. C. Baker was duly elected state printer in 1889, and there is no definite showing that he abandoned the office, or how the plaintiff came into possession of it. Although it appears that Mr. Snow was actually in the possession of the office and recognized as state printer by the other state officials, yet, in his view, these facts alone are insufficient to show that Baker had voluntarily abandoned an office to which under the law he was entitled, and which he could have recovered unless estopped from so doing by his own act. Was Mr. Hudson elected, then, in 1895? The view of the Chief Justice is that he was not elected, because he failed to receive the votes of a majority of all the members elected to the senate, as required by the act of 1879. The view of Mr. Justice JOHNSTON is that he was elected; that the joint convention was duly held; that he received a majority of all the votes cast in that joint convention, and that such vote was sufficient. The view of the writer is that he was not elected because no joint convention was held, no quorum of the senate having attended. What, then, must be the judgment? Though a majority of the court are of the opinion that Mr. Snow was elected, a different majority are of the opinion that Mr. Hudson was not elected. The Chief Justice

holds that Mr. Snow cannot recover in either of these actions, because he has failed to establish his own title to the office. Mr. Justice JOHNSTON holds that he cannot recover because Mr. Hudson was duly and legally elected as his successor. The writer alone is of the opinion that the plaintiff ought to recover; that he has shown a valid title to the office; and that the defendant has no title to it.

Judgment will be entered in favor of the defendants for costs in both cases.