No. 18,516.

D. B. WARNOCK, *Appellee*, v. W. E. MOORE, *Appellant*.

SYLLABUS BY THE COURT.

1. TWO ACTIONS PENDING—*Plea in Abatement—One Action Dismissed*. The plaintiff sued the defendant in Ness county. Afterwards the plaintiff brought a second suit on the same cause of action in Reno county. After a plea in abatement had been filed in Reno county alleging the pendency of the former suit, the Ness county action was dismissed. The plea in abatement was then overruled and the Reno county action proceeded to judgment. *Held*, the dismissal of the first action removed the bar to the maintenance of the second.

2. PLEADINGS—*Alienation of Affections—Ultimate Facts to be Pleaded*. In an action for damages by a husband for the alienation of his wife's affections it is not necessary to plead specifically the artifices by which the wrong was accomplished. It is sufficient to plead the ultimate facts.

3. SAME—*Evidence—Not Limited to Specific Acts and Dates Pleaded*. Where a petition pleads certain conduct occurring between certain dates as means whereby alienation was accomplished, but further pleads that various other means of alienation were employed which the plaintiff can not, for want of knowledge, describe with particularity, the plaintiff is not limited in his proof to the conduct and the dates specially pleaded.

4. SAME—*Evidence of Conduct of Defendant and Plaintiff's Wife—Proper*. The plaintiff's wife left his home on July 5 in company with the defendant who furnished the conveyance and supplied her with money. On the next day she and the defendant passed for husband and wife in a distant city and occupied the same apartment for two nights. *Held*, an instruction to the jury that they might consider the conduct of the defendant with reference to the plaintiff's wife after she left home was proper.

Warnock v. Moore.

5. TRIAL—*Rulings of Court and Verdict Approved.* The admission of an item of evidence offered to prove malice, and the verdict of the jury approved.

Appeal from Reno district court; CHARLES E. BRANINE, judge. Opinion filed January 10, 1914. Affirmed.

*C. M. Williams*, of Hutchinson, for the appellant.

*Frank L. Martin, Van M. Martin*, and *E. 'T. Foote*, all of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: D. B. Warnock sued W. E. Moore for damages resulting from the alienation of the affections of the plaintiff's wife by the defendant. The plaintiff recovered, and the defendant appeals.

The plaintiff first sued the defendant in Ness county in August, 1911. Service was duly made and the defendant filed a motion attacking the petition. On September 22, 1911, the plaintiff instituted a second suit against the defendant, on the same cause of action, in Reno county. On September 27 the plaintiff filed his motion to dismiss the Ness county action without prejudice. On October 10 the defendant filed a plea in abatement in the Reno county action, calling the attention of the court to the suit already pending in Ness county. On October 11 the action in Ness county was dismissed. On November 16 a second summons was issued and served on the defendant in the Reno county action. On December 4 the plea in abatement was overruled. The defendant then answered, and besides pleading to the merits set up the institution of the suit in Ness county as a bar to further proceedings. No specific objection was interposed to the service of November 16, but it is claimed that notwithstanding such service the action should have been abated.

The plaintiff could not rightfully ignore the first action and involve the defendant in another while the first suit was pending, and the plea in abatement was valid when filed. The plaintiff in effect confessed the plea and commenced again by procuring fresh service on November 16, after the Ness county suit was dismissed. It is not material that the summons was called an alias summons or that the plaintiff did not go through the formality of refiling the petition. The defendant did not ask that the proceeding thus instituted on November 16 be abated as a third suit on the same cause of action, and the ground of the plea in abatement and of the abatement feature of the answer, namely, that a former suit had been commenced in Ness county, did not apply to it. But beyond this, the dismissal of the Ness county suit rendered it unavailable as a bar to further proceedings.

In the case of *Bond v. White*, 24 Kan. 45, the plaintiff sued the defendant for forcible entry and detainer before a justice of the peace, and recovered judgment on March 19. On the same day the defendant filed an appeal bond, which the justice of the peace approved, and thereby perfected an appeal to the district court, although the transcript was not sent up for some time. On March 26 the plaintiff commenced a second action for the same relief. It was held that the pendency of the first action on appeal was a bar to the prosecution of the second. In the opinion it was said that a party may not be vexed by two actions "at the same time" for the same thing, that if the plaintiff be conscious of mistake in the one he has commenced he should abandon it and try again, and that he has no right to harass his adversary "by mere multiplicity of actions." The same principle was announced in the case of *Challiss v. Smith*, 25 Kan. 563, where it was said that if the plaintiff, ignoring the first suit, may commence a second, he may on the same principle ignore the second and commence a third, and so on indefinitely, and thus

unnecessarily vex and wrong the defendant and improperly consume the time of the courts. In support of the opinion in the Bond-White case the court quoted from 1 Bacon's Abridgement, p. 28, as follows:

" 'The law abhors a multiplicity of actions, and therefore, whenever it appears on record that the plaintiff has sued out two writs against the same defendant for the same thing, the second writ shall abate; for if it were allowed that a man should be twice arrested, or twice attached by his goods for the same thing, by the same reason he might suffer *infinitum*, and it is not necessary that both should be pending at the time of the defendant's pleading in abatement; for if there was a writ in being at the time of suing out the second, it is plain the second was vexatious and ill, *ab initio*.' " (p. 49.)

Seizing upon the latter part of this quotation the defendant argues that it is not enough that a defendant be protected from a multiplicity of suits for the same thing at the same time but that the plaintiff must either proceed in the first case or else clear the dockets entirely and then begin anew. This court has not followed Bacon's rule to such an extreme length. To do so would in some cases be merely to penalize the plaintiff and not to protect the defendant and disburden the courts. Consequently it has been held that if the first action be dismissed before the trial of the second it is no longer a bar to the maintenance of the second suit. (*Snow v. Hudson*, 56 Kan. 378, 43 Pac. 260.) It is true that in the case just cited the plaintiff could not have obtained in the first action the full relief sought in the second, but, as the syllabus shows, the decision was rested on the additional ground that the dismissal of the first action before the trial of the second lifted the bar to such trial. Such is the law elsewhere.

"Formerly the only question was whether at the time of suing out the second writ there was a writ in being, and it was held to be no answer to the plea that the first suit was ended when the plea was put in; but the prevailing rule now is that the discontinuance or dismissal

of the first suit after the commencement of the second may be set up in reply to the plea, and thus defeat an abatement." (1 Encyc. of Pl. & Pr. 755.)

"The tendency of the later cases and a preponderance of authority sustain the doctrine that it is a good answer to a plea of the pendency of a prior action for the same cause that the former suit has been discontinued, whether the discontinuance be before or after the filing of the plea. Under this doctrine the plea will be overruled unless the prior suit is pending at the time of the trial of the second." (1 Cyc. 25.)

The plaintiff alleged that on unknown dates between March 1 and July 5, 1911, the defendant, contriving and intending to alienate the affections of the plaintiff's wife, had sexual intercourse with her and made disparaging remarks about the plaintiff. It is said there was no evidence of such relations between the defendant and Mrs. Warnock or of such remarks about the plaintiff between the dates named, that no other means of alienation were specified in the petition, and consequently that the verdict and judgment rest upon matters outside the issues tendered by the petition. The petition, however, charged that the defendant contrived to alienate the plaintiff's wife from him by other means than those mentioned and in various ways which, for want of knowledge, the plaintiff was unable to describe with particularity. Therefore the plaintiff was not restricted in his proof to the devices of seduction and disparaging remarks occurring between March 1 and July 5.

"It was enough for the plaintiff to plead the ultimate facts as to the alienation of her husband's affections by the defendant, and the acts done and artifices used to accomplish the alienation are not required to be pleaded; indeed, these are largely matters of evidence by which the ultimate facts are to be proved." (*Nevins v. Nevins*, 68 Kan. 410, 412, 73 Pac. 108.)

The plaintiff purchased of the defendant a farm on which the plaintiff resided with his wife and three

children. The consideration was $6000. $1000 of this sum was to be paid in cash. The payment, however, was not in fact made but was secured by a chattel mortgage on the plaintiff's personal property. The balance of the purchase price, which bore interest at 7 per cent, was secured by a contract of sale. The farm lay near the town of Turon, where the defendant resided. The defendant commenced coming to the farm to transact business. Mrs. Warnock was well educated while her husband was not, and she usually conducted the business transactions. In the spring of 1911, the defendant concluded that he did not feel at home in town so much as he did in the country and arranged for board and lodging at the plaintiff's home. The plaintiff was a hard working farmer who spent much time in his fields. The defendant had leisure and spent time at the house with Mrs. Warnock. The defendant frequently took the plaintiff's entire family automobile riding. As time progressed he took Mrs. Warnock automobile riding alone. On July 4, at a picnic at Turner's Lake, the attentions of the defendant and Mrs. Warnock to each other, in the absence of the plaintiff, were so marked as to create much adverse comment. On the evening of July 5 the plaintiff made an excuse to look for his revolver, and after searching elsewhere found it in the defendant's suit case where his wife had placed it after she had removed the loads. The plaintiff testified as follows concerning the ensuing conversation with his wife:

"Q. Were you quarreling with her? A. I was n't exactly quarreling with her; I was talking to her.

"Q. What did you say to her? A. I told her that as soon as Mr. Moore came he was going to hit the road.

"Q. Did she holler or make a noise? A. She says, 'O, my God, David, don't do that because he has a mortgage on everything we have got and there are payments coming due on the place; if you do this he will foreclose and we will lose everything we have got.' "

About this time the defendant came up. An altercation between the two men followed and the defendant was ordered to leave the place. The defendant exhibited no haste in leaving, and the plaintiff left for town where he procured ammunition and another pistol. After he had gone the defendant telephoned to Turon for an automobile in which, when it arrived, he and Mrs. Warnock and the three children went away. Before starting Mrs. Warnock got a bundle of clothes from the house and the defendant gave her two five-dollar bills. The driver was instructed to go to Stafford. When the party arrived at Zenith the children were sent in the automobile to Mrs. Warnock's sister at Sylvia, where they arrived between ten and eleven o'clock at night. Mrs. Warnock asked the defendant if she should take the youngest child with her but the defendant said no, he would be in the road. The defendant and Mrs. Warnock went to Stafford, and from Stafford to Larned, where they arrived the next day. At Larned they passed for husband and wife and occupied the same bedroom for two nights. Not long afterwards the defendant foreclosed the chattel mortgage on the plaintiff's personal property.

The defenses to the action, which lacked the support of testimony given by the defendant himself, were that the defendant took the plaintiff's wife away for the chivalrous purpose of protecting her until the plaintiff should have time to "cool off," and that the whole affair was concocted by the husband and wife for the purpose of obtaining a blackmailing judgment against the defendant. A witness was produced who testified to meetings in the nighttime between the husband and wife at Hutchinson after the action had been instituted. This witness stated that on one occasion Mrs. Warnock desired her husband to remain over night with her at

the place where she was staying but that he said, referring to the pending suit:

"No, mamma, I don't dare stay with you, I don't dare stay here all night; you know that it will knock this deal in the head."

This witness was impeached by testimony tending to show that the defendant had promised to assist in getting her brother out of the Hutchinson reformatory if she would help him in his litigation with the plaintiff.

The court instructed the jury as follows:

"No. 8. The gist and substance of the claims of the plaintiff are, that by means of the wrongful acts and conduct of the defendant alleged in the petition, the defendant alienated the affections of paintiff's wife from him and caused her to separate from him. In determining whether these claims are true you should consider all the evidence in the case throwing any light upon the question, including the conduct of the defendant with reference to the wife of the plaintiff prior to, at the time of, and subsequent to the leaving of the home of the plaintiff by his wife as disclosed by the evidence, and if you find by the evidence, by. a preponderance thereof, that such claims are true, then your verdict should be for the plaintiff and if you fail to so find then your verdict should be for the defendant.

"No. 9. In the absence of evidence the motives of a person in the doing of any proper or lawful act are presumed to be good; and when the motive with which an act is done is the subject of inquiry, in determining what such motive was the jury have the right to consider the nature and character of the act the manner in which, and the circumstances under which it was done and all the evidence in the case touching upon the question of motive."

The defendant argues that these instructions were erroneous because they allowed the jury to consider the conduct of the defendant and Mrs. Warnock at Larned, although the alienation, if any occurred, was completed with the departure from the plaintiff's home on the night of July 5. This argument is based upon the defendant's interpretation of the petition, which

has been rejected. The ground of the action was the alienation of the affections of the plaintiff's wife. There could be no better proof of the fact than that Mrs. Warnock left her husband's home on the night of one day and on the night of the next day was conducting herself as the wife of the defendant. The petition stated that the plaintiff was not able to name and describe all the wiles employed by his wife's seducer, and he was not required to do so. Whether or not any were employed was a proper matter of inference from proved facts and circumstances. The inquiry properly extended to the time when Mrs. Warnock openly renounced fidelity to her husband and commenced to cohabit with the defendant as his wife. The plaintiff was not obliged to elect a given instant of time when his wife's affections were finally detached from him, and if he had specifically charged that the alienation was fully completed on July 5, his action would not fail if the proof indicated that the ties binding his wife to him were not completely broken until July 6, at the end of the elopement instead of at its beginning on the previous day.

Without discussing it in detail, the evidence justified the conclusion that the flight on the night of July 5, ending in the seclusion of the bedroom of the apartment house in Larned on the night of July 6, was the result of a siege of Mrs. Warnock's affections commenced when the defendant left Turon to take up his abode in the plaintiff's home.

It is said that the instructions quoted were erroneous because they did not inform the jury that the defendant must have caused the alienation intentionally and knowingly. These elements of the plaintiff's cause of action were fully covered by other instructions.

The defendant insists that the statement of the plaintiff, made while testifying, that the defendant returned to the vicinity of Turon soon after the elopement and foreclosed the chattel mortgage on the plaintiff's prop-

erty was improperly allowed to stand because the jury might have concluded that the defendant not only robbed the plaintiff of his wife but robbed him of his property also. Malice on the part of the defendant was pleaded, and the circumstance that he moved quickly against the plaintiff's property tended to establish it.

The verdict was for $7250 actual damages. No punitive damages were allowed. Estimation of damages was a matter for the jury and it is not possible for the court to say that they acted arbitrarily or capriciously, or from passion or prejudice.

Other assignments of error are disposed of by the foregoing considerations or else are not regarded as important.

The defendant has filed in this court an application for an investigation of the present relations of the plaintiff and his wife, to the end that a new trial may be granted should it appear that they are now living together or are now reconciled to each other. It is said that if Mrs. Warnock has returned to the farm where her husband and her children reside it indicates collusion in July, 1905, and at least furnishes ground for reducing the judgment. A judgment for damages for alienating the affections of a man's wife is not accompanied by any warranty in favor of the wrongdoer, and no such extraordinary situation is presented, justifying resort to unusual precedure to correct a palpable mistake and prevent a miscarriage of justice, as in the case of *Caldwell v. Modern Woodmen,* 90 Kan. 175, 133 Pac. 843.

The judgment of the district court is affirmed.