No. 35,520

JACOB F. WINGERD, *Appellee* and *Cross-appellant*, v. ARTHUR FOLEY, *Appellant*.

(127 P. 2d 524)

Opinion filed July 11, 1942.

*George K. Melvin,* of Lawrence, argued the cause, and *H. E. Walter,* of Kingman, and *John E. Boyer,* of Wichita, were on the briefs for the appellant.

*Charles C. Calkin,* of Kingman, argued the cause, and *James Conley,* of Wichita, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action on a written contract wherein defendant bound himself to pay to plaintiff the sum of $3,000 to settle a claim for civil damages for the seduction of plaintiff's wife.

The contract was executed on August 13, 1940. In its terms it was recited that—

"WHEREAS, party of the first part [plaintiff] has a cause of action against party of the second part [defendant], growing out of certain circumstances with reference to party of the first part's wife, and family, including sexual relations and affections of the wife of party of the first part, and the alienations thereof by party of the second part, and,

"WHEREAS, the parties hereto have mutually agreed each with the other, to

enter into a fair and amicable settlement of their differences, and party of the first part has agreed not to commence suit in said cause of action as against party of the second part."

In consideration of the foregoing and subsequent recitals the parties agreed and stipulated that—

"Party of the first part agrees that he will not file in any court in this state or elsewhere any cause of action as against party of the second part, for the alienation of the affections of the wife of party of the first part, and in consideration therefor, and for other good and valuable considerations, party of the second part agrees to pay to party of the first part, the total sum of three thousand dollars ($3,000) . . ."

The agreed amount was to be paid thus: $500 in cash, the receipt, of which was acknowledged, and $2,500 on or before November 15, 1940, without interest if paid when due, otherwise to draw interest at 10 percent per annum.

The contract finally stipulated—

"That said parties do hereby release and discharge any and all debts, causes of action, claims, or damages, as each may have as against the other and this contract shall constitute a full, final and complete settlement of any and all their disputes. . . .                    (Signed)  JACOB F. WINGERD,
                                                           ARTHUR FOLEY."

Defendant made default in the payment of the $2,500 balance due on the contract, and this action followed.

Plaintiff's petition alleged the pertinent facts and set up the written contract.

Defendant's answer contained a demurrer to the sufficiency of plaintiff's petition, likewise a general denial, and then pleaded in substance as follows: That defendant signed the contract sued on, and paid $500 on the date thereof, but there was no legal consideration for the contract; that plaintiff and plaintiff's wife and counsel employed by them entered into a fraudulent conspiracy to extract money from defendant, and that plaintiff made an agreement with his counsel to pay to the latter one-third of any amount which might be extracted from defendant; that in furtherance of such conspiracy—

"Plaintiff and said counsel misrepresented to defendant many matters of fact and law and threatened defendant with civil action, exposure, public ridicule and disgrace. That . . . being influenced by the threats and duress used by said plaintiff and said counsel, this defendant signed said contract not of his own voluntary will and accord, but solely because of said misrepresentations, threats and duress, . . . That the wife of said plaintiff was a party to said conspiracy . . . that plaintiff, a short time prior to the signing of

said written agreement sued on herein, accused him of improper associations with plaintiff's wife and so accused him in the presence of defendant's wife, and . . . threatened defendant and insisted upon a settlement of the damages which plaintiff claimed to have sustained by reason of the indiscretions with plaintiff's wife with which plaintiff accused defendant.

"That, for the purpose of avoiding publicity and buying their peace and quiet, and for the purpose of settling with plaintiff for all wrongs committed by defendant, imaginary or otherwise, defendant and defendant's wife solemnly agreed with plaintiff that each, any and all claims which plaintiff might have against defendant because of any transactions or relationships between defendant and plaintiff's wife should be forever settled by the payment to plaintiff of the sum and amount of $400 cash. That a full and complete accord and satisfaction as to the damages claimed by plaintiff to be due from defendant because of association of defendant with plaintiff's wife was had, . . ."

Defendant's answer further alleged that on the day following the foregoing agreement plaintiff and defendant went to Kingman (at some distance from Lansdown where the parties resided) to carry their agreement into effect, and that they went to the office of plaintiff's counsel, and after a private conference between plaintiff and his counsel, the latter told defendant that the agreed amount would not be accepted, and that defendant then signed the agreement for the larger amount under the circumstances above.

Defendant concluded his answer with a prayer that plaintiff take nothing by his alleged cause of action, and in a cross petition defendant prayed for the return of the $500 plaintiff had wrongfully obtained from him as shown above.

Plaintiff's reply contained a demurrer, a general denial, and a plea of ratification which in substance alleged that although the contract sued on recited that the $500 was paid in cash, yet it was in fact paid by a bank check which defendant requested plaintiff not to present for payment until he could procure sufficient funds to meet it, and that plaintiff complied with that request, and that defendant had ample time and full opportunity—

"To consider all of the facts and circumstances involved, and the results and effect of said contract, [and] did make arrangements for said funds and did pay check, and did thereafter make no objection to said contract of the nature and character set forth in his answer herein, . . ."

Plaintiff's reply further alleged that not long after the contract was made defendant began to urge the plaintiff to accept a less amount than the contract stipulated—

"To avoid bringing an action thereon and thereby subjecting plaintiff and plaintiff's wife to the disadvantage of bringing and maintaining an action on said contract, and suffering the humiliation and embarrassment that would

result therefrom, and . . . said defendant should not now be permitted to change his position and assert, as his reasons for refusing to perform said contract, matters wholly inconsistent with the reasons and methods heretofore adopted and practiced by him, but should be held to have ratified and endorsed said settlement and contract and be bound thereby."

When the cause was called for trial before a jury, counsel for both parties made extended opening statements, after which defendant assumed the burden of the evidence which followed and enlarged upon the facts pleaded in defense.

It was shown without dispute that by the terms of the alleged original settlement pleaded in defendant's answer the amount $400 was an error of the pleader and should have been $800; also that by defendant's plea of "accord and satisfaction" it was intended to plead "compromise and settlement" and an account stated.

When defendant rested, plaintiff demurred to the evidence and moved for judgment. That motion was sustained and judgment was entered for the amount due on the contract, and for interest and costs.

Defendant appeals, contending first that there was no consideration for the contract. On this point it is argued, in part, that there was no evidence of illicit relations between defendant and plaintiff's wife. We think the circumstances surrounding the alleged compromise and settlement for $3,000 clearly showed that defendant's invasion of plaintiff's conjugal rights was taken for granted, and the written contract contains admissions which tacitly conceded that plaintiff had a colorable cause of action, at least, against defendant which would serve as sufficient consideration for the contract. In *Reed v. Kansas Postal Telegraph & Cable Co.*, 125 Kan. 603, 264 Pac. 1065, 57 A. L. R. 275, it was said:

"Where one in good faith asserts a claim not obviously invalid, worthless, or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim." (Syl.)

In *Sawtelle v. Cosden Oil & Gas Co.*, 128 Kan. 220, 277 Pac. 45, it was said:

"It does not take a legal cinch to form a sufficient consideration for a settlement; a fairly debatable point is quite enough." (p. 228.)

But it is argued that the invasion of a husband's conjugal rights is not actionable in Kansas. We have held that a husband has an action for damages for the alienation of his wife's affections; and circumstantial evidence tending to prove illicit relations between a

defendant and the plaintiff's wife had probative force sufficient to establish the cause of action. (*Warnock v. Moore,* 91 Kan. 262, 137 Pac. 959.) We have also held that a parent has an action for the seduction of his grown daughter based upon the incidental family shame and mortification, and that the common-law theory of loss of the daughter's services as the basis for the action was not essential to a recovery. (*Anthony v. Norton,* 60 Kan. 341, 56 Pac. 529, 72 A. S. R. 360. See, also, note in 76 A. S. R. 659-682.) Thus reasoning, we could not hold that the husband's shame and mortification incidental to the seduction of his wife or criminal conversation with her was not actionable. Although there are decisions to the contrary, some of which are based on statutes, the weight of authority supports this view. In 27 Am. Jur. 135 it is said:

"A fundamental right which flows from the relation of marriage, and one which the well-being of society requires should be maintained inviolate, is that of one spouse to have exclusive marital intercourse with the other, and whenever a third person commits adultery with either spouse, he or she commits a tortious invasion of the rights of the other spouse, from which a cause of action for criminal conversation arises. At common law such a cause of action exists in favor of the husband against one who commits adultery with his wife, which is not affected by the married women's property acts."

In the same work, at page 143, it is said:

"The plaintiff in an action for criminal conversation may recover substantial damages for the adultery itself, independent of his or her loss of consortium of his or her spouse. The plaintiff may also recover for all direct and proximate losses occasioned by the tort, including loss of love and consortium, and he or she may recover for any physical pain, mental agony, lacerated feelings, wounded sensibilities, etc."

See, also, 13 R. C. L. 1484-1489, and 5 Perm. Supp. 3502, 3503; 30 C. J. 1153; Restatement, Torts, § 685.

It is next contended that because of the oral contract between plaintiff and defendant that plaintiff would accept $800 in full settlement of plaintiff's claim for damages for defendant's wrongdoing, such settlement constituted an account stated, and a binding compromise and settlement. So far as the facts of that oral contract were concerned, the trial court was bound to believe defendant's evidence, since it ruled adversely to their sufficiency as a defense to the contract. However, in summarizing the evidence and reasoning to the conclusion that judgment should be entered for plaintiff, the trial court stated that it gave full credence to defendant's testimony. The record, in part, reads:

"By the Court: Well, the way I look at this, here we have a written contract . . . is a solemn obligation between the parties. This contract just about recites what the evidence shows here. . . . I think Mr. Foley is to be complimented for adhering very closely to the truth of these transactions. I don't have any difficulty whatever to believe Mr. Foley's testimony. . . . but he doesn't show anything to set aside this contract, . . . there is nothing to show there was any misrepresentation about anything. About that duress, that is necessarily something more than mere solicitation, argument or opinion. Duress must go to the extent of destroying a man's volition, his ability and capacity to act. Nothing here to show that Mr. Foley was so overpowered that he didn't have his free will to the end to act. I don't find that he was threatened with any criminal prosecution or any imprisonment or any corporal punishment. None of those mentioned. . . . As to this $400 contract which you plead, that I think Mr. Foley and Mrs. Foley both very readily admitted that never was consummated. That there was an offer and tacitly agreed upon an amount, but when they went to write it down they both said they couldn't agree on what to put in the contract and so they came to Kingman to get it done, so up to that time there hadn't been any meeting of the minds as to what this $400 or $800 was to compensate for, and as to the consideration, I can't see but what you must rely upon the contract. As I say, it imports a consideration. Nothing here to show that the consideration recited in the contract was lacking, or was lacking at the time, so I wouldn't know how to instruct the jury as to what they were to decide. As to the facts they would find, if they believed everything that Mr. and Mrs. Foley and the other witnesses have testified to there is no defense to the written contract, accordingly the demurrer will be sustained."

What is relied on to prove duress was the conversation between defendant and plaintiff's attorney at a meeting in the latter's office. Defendant testified that when he and plaintiff tried to reduce their contract of settlement for $800 they discovered that they did not know what language to put into that contract. They had agreed on the amount defendant was to pay, but what consideration he was to get for paying that amount had not been definitely determined, nor was it agreed between the parties as to the terms of payment. When they went to Kingman to employ a lawyer and informed him what was wanted plaintiff said it was to be a contract for "hush money." That was indefinite and capable of various meanings. There is little doubt that defendant was tricked into going to that particular attorney's office. He was the county attorney and an acquaintance of plaintiff. Defendant did not know him, but believed he and plaintiff were calling on a lawyer who would be fair to both of them. The county attorney invited defendant to step out of the room while he talked to plaintiff privately, and they soon agreed on a course of strategy—that the oral agreement to settle for $800

should be repudiated, and that the attorney should open negotiations with defendant for a better settlement, and that he, the attorney, should receive for his services one-third of whatever that amount should be. Accordingly defendant was called in and the attorney told defendant that $800 was mere chicken feed, that he had committed a terrible offense, that he was in as grave a mess as some local person named Davenport, which had cost him a farm; and the attorney demanded to know if defendant didn't have a quarter section of land he would give to settle. On receiving a negative reply the attorney then named $5,000 as a suitable figure for settlement, then fell to $3,500, and eventually to $3,000, which defendant agreed to pay, and that agreement became the basis of the contract sued on.

Was there any evidence of duress? Possibly so, although the evidence much more clearly shows fraud and deceit on the part of plaintiff in leading defendant to believe that the attorney would simply reduce the $800 contract to writing in lawyerlike terms, and that he "would be fair to both parties." It is only fair to add, however, that while the record shows that the attorney was aggressive and sought to drive a hard bargain with defendant, there is no evidence that the attorney pretended "to be fair to both parties" or that he even knew he was expected to be other than the hired partisan of plaintiff in the negotiations. There is no pretense that the attorney was employed by defendant, or that defendant was expected to pay or did pay for his services.

But assuming that the attorney's aggressive attitude and his alarming language gave color of duress to defendant's assent to the written contract, how long did that duress last? He appeared somewhat shaken when he rejoined his wife, and on the return journey to their home at Lansdown she drove their automobile, but that was not a rare thing for her to do. Plaintiff had agreed to hold the $500 check given as down payment on the $3,000 contract until defendant could arrange for funds to meet it. Plaintiff did hold it for seven days before presenting it for payment. Defendant had that considerable interval to repudiate the contract and stop payment of the check if he had signed the contract under duress. There is no evidence that the alleged duress continued for that period of time. Moreover, about a month after the contract was made, defendant began to urge plaintiff to reduce the amount, but not on any pretense that it was signed under duress. Inferribly

defendant's repeated requests for a reduction were based on the theory that plaintiff had as much to lose in the way of mortification and humiliation as the defendant if the contract should become the subject of a lawsuit. Conceding without deciding that the circumstances attending the making of the written contract had some color of duress, it is too clear for controversy that defendant ratified it by his subsequent acts of affirmance and by refraining to repudiate it promptly.

In view of the conclusion just reached we deem it needless to recapitulate the substance of our many decisions touching the essentials of duress which must be proved to avoid the binding force of a written instrument for the payment of money, but among our recent cases on this subject, see *Western Paving Co. v. Sifers,* 126 Kan. 460, 268 Pac. 803; *Fritchen v. Mueller,* 132 Kan. 491, 498, 297 Pac. 409; *Brane v. First National Bank,* 137 Kan. 403, 20 P. 2d 506; *Ogle v. Freeman,* 150 Kan. 864, 96 P. 2d 670.

Plaintiff cross-appealed on the overruling of his motion for judgment on the pleadings and defendant's opening statement, but the conclusion we now reach renders that point immaterial.

The judgment is affirmed.